UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
SEP 30 1998
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

J. JACKSON BARNETTE,         ]
                             ]
    Plaintiff(s),             ]
                             ]
vs.                           ]    CV 98-N-2046-W
                             ]
THE BOARD OF TRUSTEES OF THE  ]    ENTERED
UNIVERSITY OF ALABAMA, et al.,]    OCT 1 1998
                             ]
    Defendant(s).             ]

**Memorandum of Decision**

In this employment discrimination action, the plaintiff, J. Jackson Barnette ("Barnette"), brings claims against his former employer,[1] The Board of Trustees of the University Of Alabama (the "University") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, the plaintiff asserts that the defendant discriminated against him on the basis of sex by failing to grant him tenure when, according to him, other less qualified female professors were granted tenure.

The defendant has moved to dismiss and, after briefing, the matter was submitted following the court's regularly scheduled motion docket on September 30, 1998. The motion is now properly before the court and ripe for decision. Upon due consideration, the motion will be granted.

---

[1] Barnette may not, and apparently does not, seek Title VII relief against any of the individual defendants. Oddly, Barnette has nevertheless named several individual defendants, despite the fact that his complaint appears to contain no claims against them. Because Barnette asserts only Title VII claims, and these are asserted only against the University, the remaining defendants are due to be dismissed from this lawsuit. Therefore, although all defendants joined in the motion to dismiss, only the claims of the Board will be discussed below. References to the "defendant" in the singular thus refers to the Board, the only defendant against whom a claim has been asserted.



Plaintiff, Dr. Jack Barnette, alleges that he was a full professor in the College of Education at the University of Alabama from 1990 to 1997. He claims he was denied tenure in the spring of 1996. After filing a timely Charge of Discrimination on the basis of sex and age[2] with the EEOC on September 20, 1996, Barnette received a Dismissal and Notice of Rights from the EEOC, dated February 25, 1998, authorizing him to file suit within 90 days of his receipt of the notice. On May 26, 1998, exactly 90 days after the date of the notice but within the 90-day period following its receipt, the plaintiff filed a civil suit in the Circuit Court of Tuscaloosa alleging that the defendant had discriminated against him on the basis of both age and sex.

Approximately one month before Barnette filed his state complaint, the Eleventh Circuit Court of Appeals released its opinion in *Kimel v. State of Florida Board of Regents*, 139 F.3d 1426 (11th Cir. 1988), in which it held that the Congress had not validly abrogated Eleventh Amendment immunity for state agencies and, indeed, that it had no power to abrogate the state's Eleventh Amendment immunity. In his state court complaint, Barnette asserted that while he was prevented by *Kimel* from suing the Board of Trustees of the University of Alabama for violating the ADEA in federal court, he could bring the same claim in state court, because the state had effectively waived its sovereign immunity by

---

[2] The district courts of the United States do *not* have original jurisdiction over plaintiff's ADEA causes of action because the State of Alabama enjoys Eleventh Amendment immunity under *Kimel v. State of Florida Board of Regents*, 139 F.3d 1426 (11th Cir. 1998). Barnette concedes this point, and claims that he is actively pursuing only his claim under Title VII. He wants to preserve his cause of action under the ADEA in the event that the law changes during the pendency of this action. The court currently has no jurisdiction over an ADEA claim against the University. Therefore his ADEA claims, to the extent he has pleaded any, are due to dismissed, as defendants contend and plaintiff concedes.

2

enacting a state law by which it created a cause of action substantially identical to that of the ADEA.[3]

On July 15, 1998, one hundred forty days after the date of the notice and well over ninety days after he received the right to sue letter, the University moved to dismiss the state court complaint on the sovereign immunity grounds. Barnette voluntarily dismissed the state court action on August 12, 1998, and concurrently filed the present action in this court.

Defendant points out, and plaintiff agrees, that he failed to file his claim in this court within ninety days after receiving his right to sue letter from the EEOC, which under ordinary circumstances would bar this claim. To avoid the consequences of his late filing, Barnette seeks to invoke the doctrine of equitable tolling.[4] The ninety day rule is subject to this court-created equitable doctrine. *See Suarez v. Little Havana Activities*, 721 F.2d 338, 340 (11th Cir. 1983) (90 day rule is subject to equitable tolling); *Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992, 1007 (11th Cir. 1982) (90 day rule is not jurisdictional). The only real dispute between the parties is whether plaintiff can qualify for benefits of this equitable relief.[5]

---

[3] The validity of this argument is suspect, given the state constitutional prohibition on the waiver of Alabama's sovereign immunity. In reviewing these issues, it is well to keep in mind that Eleventh Amendment immunity and state sovereign immunity are two entirely different things.

[4] Barnette concedes that it is his burden to show that equitable tolling is warranted, *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993); and he concedes that dismissal of the earlier suit without prejudice does not automatically toll the statute, *Justice v. United States*, 6 F.3d 1474, 1478-79 (11th Cir. 1993); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[5] In addition to the disputed question of equitable tolling, defendants' Motion to Dismiss raises some matters which are not in dispute. Under the current state of the law, Barnette may not bring an ADEA claim in this Court. *See supra* note 2.

3

As an equitable doctrine, tolling is primarily governed by principles of fairness. The Eleventh Circuit has recently summarized the balancing of interests the doctrine requires.

> Whenever delay occurs in the institution or prosecution of a lawsuit, conflicting concerns arise regarding the fairness of continuing the proceedings. On the one hand, statutes of limitations protect defendants, "promot[ing] justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights. *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428, 85 S. Ct. 1050, 1054, 13 L. Ed. 2d 941 (1965) (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49, 64 S. Ct. 582, 586, 88 L. Ed. 788 (1944)) (citation omitted). On the other hand, these concerns may be outweighed when the interests of justice require that a plaintiff's rights be vindicated. Id. at 428, 85 S. Ct. at 1055; see David D. Doran, Comment, *Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis*, 64 Wash. L. Rev. 681, 682 (1989) ("Equitable tolling, like all equitable remedies, emerged as the 'equity courts' response to injustices resulting from decisions of the 'law courts' in cases involving inequitable conduct."). Thus, courts, acting in their equitable capacity, will toll statutes of limitations, but "only upon finding an inequitable event that prevented plaintiff's timely action." Doran, Comment, 64 Wash. L. Rev. at 682. The burden is on the plaintiff to show that equitable tolling is warranted. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir.1993).
>
> The interests of justice are most often aligned with the plaintiff when the defendant misleads her into allowing the statutory period to lapse, when she has no reasonable way of discovering the wrong perpetrated against her, or when she timely files a technically defective pleading and in all other respects acts with "'the proper diligence ... which ... statutes of limitation were intended to insure[.]'" The interests of justice side with the defendant when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running, and, of course, when she fails to act with due diligence.

*Justice v. United States*, 6 F.3d 1474, 1479-80 (11th Cir. 1993) (citations omitted). While courts are somewhat flexible when a plaintiff has tried, in good faith, to pursue his claim

4

in a timely fashion, they "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 457(1990).

The equitable tolling doctrine has natural application in cases in which the plaintiff has "timely asserted his rights mistakenly in the wrong forum." *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 845 (3d Cir. 1992). In these cases, the plaintiff has actively pursued his rights, and the prejudice to the defendant is minimal because the prior action gave notice that the claims were being pursued. Acting on this logic, the Supreme Court held in *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 85 S. Ct. 1050 (1965) that the statute of limitations on a plaintiff's FELA claim was equitably tolled by a complaint filed in state court, even though venue in the state court was not proper. The Supreme Court observed that

> While venue was improper in the state court, under Ohio law venue objections may be waived by the defendant, and evidently in past cases defendant railroads, including this respondent, had waived objections to venue so that suits by nonresidents of Ohio could proceed in state courts. Petitioner, then, failed to file a[] FELA action in the federal courts, not because he was disinterested, but solely because he felt that his state action was sufficient. Respondent could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy; in fact, respondent appeared specially in the Ohio court to file a motion for dismissal on grounds of improper venue.

*Burnett*, 380 U.S. at 429-30, 85 S. Ct. at 1055.

The Sixth Circuit has drawn from the logic of *Burnett* the principle that "tolling is appropriate, even in the absence of any misleading conduct by the employer, when the employee files a timely Title VII action in a court and there exists a reasonable legal theory

5

for invoking the jurisdiction of that court." *Fox v. Eaton Corp.*, 615 F.2d 716, 719 (6th Cir. 1980). The court has also pointed out that,

> ... [A]s *Burnett* teaches, the primary purpose of statutes of limitations is to promote fairness to defendants by preventing prosecution of stale claims and the loss of relevant evidence and by encouraging diligence by plaintiffs. Where circumstances arise in which the plaintiff has been diligent and the defendant has been given adequate notice of the claim, "courts must be flexible to assure that the true purpose of the limitation is served."
>
> It cannot be argued that it is not fair to require defendant to answer and defend in the case at bar. From the outset of the state court proceedings, defendant had notice of and knowledge of the nature of plaintiffs' claim and that the allegations contained therein gave rise to a cause of action under [the federal statute]. Indeed, it was the defendant who moved for dismissal of the state claim on the ground that it was preempted .... Nor can it be argued that the defendant was presented with a stale claim or deprived of an opportunity to preserve relevant evidence or that plaintiffs did not diligently pursue their claim.

*Farrell v. Automobile Club of Michigan*, 870 F.2d 1129, 1134 (6th Cir. 1989).

Nonetheless, there are limits to a court's generosity in cases involving misfiled claims. The Eleventh Circuit has cautioned that,

> due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling. The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly. *Irwin*, 498 U.S. at 96, 111 S. Ct. at 457-58. Though his dereliction be only incidental, a generally diligent plaintiff who files late because of his own negligence typically may not invoke equity to avoid the statute of limitations. "Principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S. Ct. at 458.

*Justice*, 6 F.3d at 1479-80. Likewise, a mere mistake about the state of the law is also not sufficient. "Ignorance of the law usually is not a factor that can warrant equitable tolling" *Wakefield v. Railroad Retirement Bd.*, 131 F.3d 967, 970 (11th Cir. 1997). Even under its

6

fairly flexible approach to equitable tolling, the Sixth Circuit has cautioned that "commencement of an action in a clearly inappropriate forum does not equitably toll the statute of limitations." *Farrell*, 870 F.2d at 1132 (quoting *Silverburg v. Thompson McKinnon Securities, Inc.*, 787 F.2d 1079, 1082 (6th Cir. 1986)).

The Eleventh Circuit has not examined the particular question of tolling on claims filed in the wrong court in the same depth as the Sixth Circuit, but it has emphasized caution in applying the tolling doctrine. It is therefore not clear exactly how courts in this circuit should weigh out the delicate balance of factors implicated by tolling in this particular situation, and where exactly the line between time-barred and viable claims should be drawn. However, based on the authorities above, the court concludes that tolling is appropriate at least in circumstances where, as in *Burnett*, the plaintiff has reasonable grounds for believing that "his state action was sufficient." *Burnett*, 380 U.S. at 429-30, 85 S. Ct. at 1055.

"The critical issue, therefore, becomes whether the ... state court clearly lacked jurisdiction over plaintiffs' ... claim." *Id.* at 1133. As *Burnett* illustrates, the presence of a defense to jurisdiction does not negate equitable tolling, as long as there is some reason to think that the defense may be flawed or will not be asserted. To resolve the equitable tolling question, the court must look back to Barnette's decision to file in state court, and focus its attention on the validity of defendant's sovereign immunity defense, and on the likelihood that the defendant might have waived it. As this court reads the cases, a plaintiff is given leeway when it is not clear how an issue might come out, or how the defendant might act. A mistake of established law, on the other hand, will not justify tolling.

7

As noted above, the plaintiff has the burden to prove that he is entitled to equitable tolling. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993). Though he concedes that he has a burden of proof, Mr. Barnette never attempts in his brief to explain why his decision to file his action in state court was a reasonable one. Instead, he seeks to invoke tolling because 1) defendants, not the plaintiff, made the decision to invoke sovereign immunity and 2) defendants have not been prejudiced. For the reasons discussed above, the former argument is helpful only if the plaintiff had a reasonable expectation high that the defendant would waive its sovereign immunity. Clearly, however, Barnett had no reasonable expectation.

Mr. Barnette suggests that the sovereign immunity defense might be waivable but cites only to a case that dealt with Eleventh Amendment Immunity. *Plaintiff's Brief in Opposition to Motion to Dismiss* at 9. Eleventh Amendment immunity, controlled by the federal constitution, is a very different creature from sovereign immunity, which is controlled by Alabama's constitution. Article 1, section 14 of the Alabama constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." As the defendants pointed out in state court, this clause is so strongly worded as to "'wholly withdraw[] from the Legislature, or any other state authority, the power to give consent to a suit against the state." *Alabama State Docks v. Saxon*, 631 So. 2d 943 (Ala. 1994) (quoting *Dunn Constr. Co. v. State Board of Adjustment*, 175 So. 383, 386 (Ala. 1937); *see Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 91998). Thus sovereign immunity apparently cannot be waived in advance, for example by statute. However, it appears that, as a procedural matter, the state may waive its defense by failing

8

to raise it. *Department of Revenue v. Price-Williams*, 594 So. 2d 48 (Ala. 1992). However, because of the constitution's mandate, such a waiver may well be unconstitutional.

The plaintiff's second argument, that the defendant will suffer no prejudice, has been repeatedly rejected by the courts. The Supreme Court has indicated that such an argument is unavailing. "Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726 (1984).

Though far from entirely clear, the record suggests that Mr. Barnett's attorney simply made a poor professional decision, perhaps based upon less than complete research, and in an effort to avoid the effect of the Eleventh Circuit's decision in *Kimel*.

By separate order, the defendants' motion to dismiss will be granted and the action will be dismissed with prejudice.

Done, this 30th day of September, 1998.

_____
Edwin L. Nelson
United States District Judge